**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ILLINOIS STATE PAINTERS WELFARE FUND, PAINTERS DISTRICT COUNCIL #58 401k TRUST FUND, AND PAINTERS DISTRICT COUNCIL #58 FRINGE BENEFIT FUNDS,** ) ) ) ) ) ) | **Case No. 19-CV-280-SMY** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **AB DRYWALL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs Illinois State Painters Welfare Fund, Painters District Count #58 401(k) Trust Fund, and Painters District Council #58 Fringe Benefit Funds' (collectively "Funds") filed the instant action alleging that Defendant AB Drywall, Inc. ("AB") owes $20,536.80 in contributions plus fees, interest, and other damages, pursuant to the Employment Retirement Income Security Act of  1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 151, *et seq*.  Now pending before the Court is the Funds' Motion for Summary Judgment (Doc. 21) to which AB responded (Doc. 29).  For the following reasons, the motion is **GRANTED in part**.

### Background

The following facts are undisputed: Defendant AB was incorporated in December 2003 and ceased operation in December 2017. AB was owned and operated by Larry Brummet who managed its day-to-day affairs.  Plaintiff Funds provide ERISA retirement, health, and welfare

benefits to employees of employers who are parties to Collective Bargaining Agreements ("CBA") with the Funds.

AB entered into a CBA with the Funds on August 9, 2017 (Doc. 22-1). Pursuant to the CBA, AB reported and paid benefit contributions to the Funds on behalf of its bargaining unit employees to the Funds. AB also reported and paid contributions on behalf of Brummet "for the hours spent working with the tools and/or working as a supervisor" (Def. Statement of Material Facts ¶ 44).[1] Between 2013 and 2018, AB reported and paid contributions on behalf of Brummet for the following hours: 0 hours in 2013; 415 hours in 2014; 320 hours in 2015; 964 hours in 2016; 952 hours in 2017; and 405 hours in 2018 (Doc. 22-8, p. 2). During the same time period, Brummet finished drywall for AIES which was also a party to a CBA with the Funds.

The Funds conducted an audit of AB for the years 2013 to 2017. The audit found that contributions for various months were due from AB for Brummet's benefits (Doc. 22-17).[2] The audit also found that AB underpaid contributions on behalf of its employee, Jared Shires, during the relevant period (AB does not dispute this finding).[3]

Following the audit, on November 15, 2017, the Funds mailed a letter addressed to AB to its accountant, Gateway Business Service ("Gateway") (Doc. 22-7). Although AB regularly received business correspondence through Gateway, Brummet did not see the letter until April 2018. The letter stated that in order for non-bargaining employees (like Brummet) to be covered

---

[1] Plaintiffs state that "A B Drywall reported and paid on 'hours worked by Larry Brummet for the hours spent working with the tools and/or working as a supervisor . . . .'" (Plaintiffs' Statement of Material Facts ¶ 43). Plaintiffs also state that "Larry Brummet did not hang, tape, sand, or paint drywall for A B Drywall." (*Id*. ¶ 9). Instead, he "'figured jobs, worked on tools, took checks out to a job, took material out, stuff like that'" – "worked on tools" meaning that he repaired them. (*Id*. ¶ 45).

[2] For example, the audit found that in 2015, Brummit reported only 412 work hours and AB paid contributions for that amount but owed additional contributions for 1,508 hours (*Id.*).

[3] Defendant offers no argument that it underpaid contributions on behalf of its employee Shires. Accordingly, Plaintiffs are entitled to judgment on that claim.

by the ERISA plans, AB must sign a "participation agreement."  Attached to the letter were three participation agreements entitled "Bargaining Unit Alumni Personnel Only," "All Non-Bargaining Unit Personnel Reporting", and "All Working Owner Reporting," from which AB could choose (*Id*.).  AB did not sign any of the participation agreements.  Instead, AB ceased operations and Brummet retired (Doc 29-1, ¶ 10).

AB disputes liability with respect to contributions for Brummet, but does not dispute Plaintiffs' calculation of $20,536.58 delinquent in contributions, $3,449.72 in interest, $4,107.36 in liquidated damages, $2,345.58 in audit costs, and $33,610.83 in attorney fees.

### Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 323.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

Section 302 of the LMRA requires a written agreement "between the employer and the employees' representative governing the rights of employees on whose behalf the contributions were made . . . ."  *Gariup v. Birchler Ceiling & Interior Co, Inc.*, 777 F.2d 370, 375 (7th Cir. 1985); 29 U.S.C. § 186(c)(5)(B).  "An unsigned written agreement satisfies Section 302(c)(d)(B)'s 'written agreement' requirement."  *Brown v. C. Volante Corp.*, 194 F.3d 351, 355 (7th Cir. 1999).

However, in order to bind an employer, an ERISA fund must demonstrate that its "conduct manifested an intent to adopt, or agree to, the unsigned" agreement." *Id*.; *Bricklayers local 21 of Illinois Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, (7th Cir. 2004).

Plaintiffs argue that AB conducted itself and paid contributions "'in accordance with'" the participation agreements attached to the November 15, 2017 letter, and consequently, it is bound by those agreements.  They maintain that Brummet was a "working owner" and "worked with the tools" for AIES during the relevant time period.[4]  Alternatively, they contend that Brummet qualifies as an "alumni personnel" because while he did not work as a traditional painter, he had at one time worked for a participating employer and is employed for at least 100 hours per month.[5]  Finally, Plaintiffs argue that regardless of the particular participation agreement that covers Brummet, AB still owes contributions for a minimum of 160 hours/month during the relevant reporting period.  But these facts alone cannot support summary judgment on this point.

"Prior cases that have held an employer bound to a collective bargaining agreement as a result of conduct have emphasized, among other factors, the payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction, such as that created by grievance procedures." *Bricklayers Local 21*, 385 F.3d at 766 (collecting cases). Other relevant factors include submission of monthly contributions reports at the rates described in the agreement and cooperation with an audit. *Id*.  In the case cited by Plaintiffs, the Seventh Circuit found agreement where the employer paid contributions at the rate described in a CBA and tendered contribution reports for years.  *Line Const. Ben. Fund v. Allied Elec. Contractors, Inc.*,

---

[4] Thus, Plaintiffs argue that AB is bound by the "All Working Owner Reporting," participation agreement.
[5] Thus, Plaintiffs argue that AB is bound by the "Bargaining Unit Alumni Personnel Only" participation agreement.

591 F.3d 576, 580-581 (7th Cir. 2010).

Here, the only "evidence" presented by the Funds of AB's purported consent to the participation agreements is that Brummet reported 160 hours of work in certain months – the same number of hours set forth in the participation agreements.  While this suggests compliance with the terms of the CBAs signed by AB and AIES, by itself, it is not sufficient evidence of agreement through conduct.  Plaintiffs essentially argue that Brummet never "worked with the tools" for AB and that as a result, any contributions it paid must have been pursuant to a participation agreement instead of the CBA.  What is missing however is *evidence of assent to the participation agreements*.  Given this dearth of evidence, summary judgment cannot be entered against AB with respect to its liability for contributions owed for Brummet's benefit.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **GRANTED in part**.  Judgment is granted as to Defendant's liability for unpaid contributions on behalf on Jared Shires; Plaintiffs shall submit proof of the amount due and owing as to this claim within 30 days of the entry of this Order.  Summary judgment is denied as to Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

**DATED:  December 17, 2020**

**STACI M. YANDLE**
**United States District Judge**